IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| SARA J. FERN, ) | |
| ) | Bankruptcy No. 14-00168 |
| Debtor. ) | |
| ) | |
| SARA J. FERN, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 14-09027 |
| ) | |
| v. ) | |
| ) | |
| FEDLOAN SERVICING, ) | |
| U.S. DEPARTMENT OF ) | |
| EDUCATION, and ) | |
| PENNSYLVANIA HIGHER ) | |
| EDUCATION ASSISTANCE ) | |
| AGENCY ) | |
| ) | |
| Defendants. ) | |

**RULING ON DISCHARGEABILITY OF STUDENT LOANS**

This matter came before the Court for trial in Dubuque, Iowa. Stuart Hoover appeared for Debtor Sara Fern. Marty McLaulghin appeared for the United States Department of Education ("the Department"). The parties submitted post-trial briefs. This is a core proceeding under 28 U.S.C. § 157(b)(I).

**STATEMENT OF THE CASE**

Debtor owes over $27,000 in student loans. Through various types of deferment and forbearance, she has never made a payment on that debt. Debtor

argues that not discharging the student loans would impose an undue hardship on her and her three children. Debtor argues that her financial resources and expenses are minimal and that she is unable to repay the loans without undue hardship. Debtor argues that she is unable to get credit for other loans because of her student loan obligations. Debtor testified that the debt is a mental and emotional burden.

The Department argues that repayment under an income- or earning-based repayment plan would not impose an undue hardship on Debtor. At her current income and filing status, Debtor would make "payments" of $0 a month under such plans. The Department argues that, whatever her income and expenses, $0 a month payments could not be an undue hardship. The Department also argues that, under such plans, the loans would be reported as current on her credit report.

For the reasons that follow, the Court finds that not discharging Debtor's student loans would cause an undue hardship. The student loans are dischargeable.

## STATEMENT OF THE FACTS

Debtor is 35 years old. She is a single mother of three dependent children ages 16, 11, and 3. The fathers of the children do not assist financially or pay their court ordered child support. Debtor has attempted to collect child support from each of the childrens' fathers but those attempts have been fruitless.

Debtor has worked at Focus Services, LLC for 6 years.  Her take home pay is $1,506.78 a month.  Debtor testified that this job is flexible and works well for her and her family.  For example, Debtor may leave work to care for a sick child.

Debtor testified that she has no unnecessary expenses.  Debtor receives $368 a month in food stamps, down from $440 at time of filing.  Debtor and her children have lived in their current place for 2 years.  Debtor pays $141 a month in rent and receives $538 in rental assistance.  Debtor has no savings or assets.

Debtor regularly lives at a deficit.  Until recently, she relied on loans from her mother to make ends meet.  She uses her tax refund and earned income credit to pay her mother back and to try to pay bills that accrued during the year.

Debtor's mother retired last year and is no longer be able to assist with regular loans.  Debtor does not know how she will be able to make it financially without her mother's assistance.  In particular, Debtor's car has 134,000 miles on it and is need of repair.  It will probably need to be replaced in the near future.  Debtor needs her car to get to work.   Her 16 year old daughter may be able to start working to help out financially, but would need a car to do so.  Debtor has been unable to get appropriate financing to buy a car.

Debtor took out her first student loans in 2002–2005.  She attended school to become an accounting clerk.  Debtor was unable to complete one of the required classes after two attempts and did not finish the course of study.  Debtor accrued

3

about $15,000 in loans for this education. The most recent account statement shows the principle balance of these loans had grown to $19,848.20 because of her inability to pay.

Around 2007, Debtor decided to go back to school. She attended Capri College to become an esthetician. Debtor accrued about $5,300 in loans for this education. Debtor completed this course of study. The most recent account statement shows the principal balance has grown to $7,069.47 because of her inability to pay.

Debtor completed the esthetician licensing requirement. She began work as an esthetician, renting space at Jamaica Me Tan Salon & Spa. When working at Jamaica Me Tan Salon & Spa, she had to find her own clientele. She was unable to build up sufficient clientele to support her family. She stopped working at Jamaica Me Tan Salon & Spa after two months. Since then, her license has expired. Debtor testified that renewing her license would require taking classes and paying fees. Debtor testified that she cannot afford that expense.

After quitting work at Jamaica Me Tan Salon & Spa, Debtor worked at various call centers and BioLife until getting her current job at Focus Services, LLC. Debtor testified that she has casually looked at job postings online but has not applied for or seriously pursued other employment in the last three years. Debtor testified that she regrets going to school and does not plan to go back.

Debtor has never made a payment on any of her student loans. The loans have always been in deferment or forbearance. As a result, Debtor has never been delinquent on the loans, never in default, and has never missed a payment.

Debtor testified that she would need to make $45,000 to $50,000 a year before she would be able to make payments on her student loans. Debtor testified that the debt is an emotional burden on her as she tries to raise her children. She feels like she cannot, or will never be able to, get ahead with the student loans hanging over her. Debtor testified that her student loans have hurt her credit score such that she is unable to get loans. Debtor testified that she was denied a loan 6 years ago because of her credit. Debtor has not attempted to get a loan since that time. Apart from the student loans, Debtor has had no other significant debt in the last ten years. Debtor testified that, in the past, she has been able to get loans only because her mother has cosigned.

Debtor testified that the loans are an emotional burden. She testified that the debt is always on her mind, and the fact that it is always growing causes her more stress. Debtor testified that she would like to repay the loans, but doesn't think she will ever be able to.

Chris Bolander, a loan analysis for the Department, testified that Debtor would benefit from participating in an "income-based repayment" plan. Mr.

5

Bolander testified that there were at least two such repayment plans available to Debtor that would not require payments given her current family size and income.

Income Based Repayment ("IBR") determines monthly payment based on family size and annual income. Under IBR, a borrower's monthly loan payment will never exceed more than 15% of the amount by which their adjusted gross income exceeds 150% of the poverty line for the relevant family size and state. After 25 years of making the appropriate IBR payments, the balance of the debt is canceled, even if little or no part of the debt has been paid.

Under IBR, for Debtor and her three dependents, her adjusted gross annual income would need to be at least $36,970 before she had to begin making any payments. If Debtor had two dependents, Debtor would need to earn more than $30,730 a year to begin making payments. If Debtor had only one dependent, Debtor would need to earn more than $24,000 a year to begin making payments.

Pay As You Earn ("PAYE") is another option. PAYE bases payment on 10% of discretionary income above 150% of the poverty rate. Any balance remaining after 20 years is canceled, again no matter how much or how little has been paid.

Mr. Bolander testified that, from his review of Debtor's loan file and financial statements, she would qualify for both of these programs. He also testified that, assuming no change in Debtor's family size or income, her payment

6

under either plan would be $0 right now. Mr. Bolander testified that completing either of these plans (IBR or PAYE) would fulfil Debtor's obligation to the Department, even if she paid little or nothing. For both plans, she would be required to certify her income and family status each year.

Mr. Bolander also testified about the effect of these programs on a borrower's credit report. He testified that, even though payments may be $0, the credit report would show that Debtor is current. He testified that borrowers on income-based repayment plans who are current are not noted in credit reports as being delinquent or in default.

### CONCLUSIONS OF LAW AND ANALYSIS

The Bankruptcy Code sets out the standard that a debtor must meet to discharge their student loans:

> A discharge . . . does not discharge an individual debtor from any debt . . . **unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents**, for . . . an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution . . . .

11 U.S.C. § 523(a)(8) (2012). The Bankruptcy Code does not define "undue hardship." Schulstadt v. United States Dep't of Educ. (In re Schulstadt), 322 B.R. 863, 866 (Bankr. N.D. Iowa 2005). In the Eighth Circuit, courts apply a "totality-of-the-circumstances" test to determine whether excepting student loans from

7

discharge would "impose an undue hardship." Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003); see also id. (noting that the Eighth Circuit first adopted this test in Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)).

This approach is "less restrictive" than the other widely used test for determining undue hardship set out in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987), which requires debtors to show that repayment would force debtors and their dependents below a "'minimal standard' of living." Long, 322 F.3d at 554 (citing and quoting Brunner).

Thus, courts in the Eighth Circuit apply what is referred to as the "totality of the circumstances" test or the Andrews test. Schulstadt, 322 B.R. at 866–67. Under that test, courts "consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) the debtor's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." Long, 322 F.3d at 554. In applying this test, courts must examine "each undue hardship case . . . on the unique facts and circumstances that surround the particular bankruptcy." Id. It is the debtor's burden to prove undue hardship by a preponderance of the evidence. Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009). The Court will consider each of the factors laid out in Long.

8

**I.  Debtor's Past, Present, and Reasonably Reliable Future Financial Resources**

The Court considers Debtor's past, present, and reasonably reliable future financial resources when determining whether excepting her student loans from discharge will cause an undue hardship.  Long, 322 F.3d at 554.  Debtor notes that she has never made more than $25,000 a year, that her education did not lead to gainful employment, and that there is no reason to think that her future financial resources will improve.

The Department asserts that Debtor is not maximizing her current earning potential.  The Department notes that Debtor is not disabled and has no health concerns that would limit her ability to work.  The Department argues that Debtor has not conducted a satisfactory job search.

It is undisputed that Debtor has never made more than $25,000 a year.  It is also undisputed that Debtor tried two different courses of study and neither one resulted in gainful employment.  It is similarly undisputed that Debtor frequently relied on her mother's financial assistance.

Debtor currently makes $1506.78 a month.  She also receives $368 in food stamps and $538 in rental assistance.  Her current income is within the range of what she has made in the past.  Debtor testified that she recently looked at job postings online, and although she has not applied for a few years, would gladly take another job if it paid more than her current job.  Her current financial

resources are somewhat worse than her past financial resources. She is no longer able to get financial assistance from her mother. Debtor testified that, because her mother is no longer able to help, Debtor is not sure what she will do if unexpected expenses arise. Debtor also receives $72 less in food stamps per month than she did at the time she filed. Debtor has no savings or assets.

Debtor has never had a substantial income and there is nothing in the record to indicate that her income will increase significantly in the future. Her efforts to increase her earning ability through education were not successful. They resulted only in the student loan expenses at issue in this case. Debtor testified that she has no plans to go back to school. She cannot afford to renew her esthetician license.

Based on the record, the Court finds that Debtor is maximizing her current earning potential. Her current income is in line with her past income. Debtor's current financial resources are slim. The Court also finds that it is unlikely that Debtor's financial resources will improve in the future. Debtor's financial resources and ability to pay weigh in favor of discharge.

## II.    Debtor's Reasonable and Necessary Living Expenses

The Court also considers whether Debtor's expenses are reasonable and necessary. Long, 322 F.3d at 554. If there are unnecessary or unreasonable expenses then Debtor may have room in her income to repay her student loans. "To be reasonable and necessary, an expense must be 'modest and commensurate

with the debtor's resources." <u>Abney v. United States Dept. of Educ.</u> (<u>In re Abney</u>), 540 B.R. 681, 686 (Bankr. W.D. Mo. 2015) (internal quotation marks omitted). "A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." <u>Id.</u> (internal quotation marks omitted).

> Debtor's bankruptcy petition shows the following monthly expenses:
>
> Rent $750
> Renter's insurance $18
> Home upkeep $5
> Electric, heat $150
> Water $80
> Cell phone $150
> Internet $40
> Food $600
> Clothing/laundry $50
> Medical/dental $10
> Transportation $140
> Car insurance $60
> Car tags $22.08
> Car payments $275
> Personal care $40
> Household items $35
> School expenses $30
> Diapers $20

These expenses total $2475.08. Debtor has an income, including food stamps and rental assistance, of $2,412.78 per month. Thus, Debtor's expenses exceed her income by $62.30. Debtor also testified that she has had to borrow money from her mother to pay for unexpected expenses and that her family

regularly lives at a deficit. Debtor argues that all of her expenses are reasonable and necessary for her and her three children.

The Department concedes that her expenses are not "significantly unreasonable or unnecessary." The Department does state, however, that there is "no justification in the record for cellphones and internet and perhaps [Debtor's] youngest child no longer requires diapers, [but] as a whole these expenses do not appear . . . outrageous." Apart from these statements, the Department does not argue that Debtor's expenses are unreasonable or unnecessary.

The Court finds that there is nothing in the record to indicate that Debtor's expenses for cellphone, internet, or diapers are unreasonable or unnecessary. Debtor does not appear to have a landline phone. There is also nothing to indicate whether Debtor's child needs to remains in diapers. The Department did not ask Debtor about these expenses at trial. Debtor's only testimony about her expenses was that all of her expenses were reasonable and necessary. In the absence of any other evidence, and considering that expenses for cell phone, internet, and diapers are not facially unreasonable or unnecessary, the Court finds that Debtor's testimony is persuasive.

The Court finds that Debtor's expenses are modest for a family of four and commensurate with her resources. The Court finds that Debtor's expenses are

reasonable and necessary for a minimal standard of living for herself and her children.  Debtor's living expenses thus also weigh in favor of discharge.

### III. Other Relevant Facts and Circumstances

The Department's main argument is that, because Debtor qualifies for repayment plans where her monthly payment would be $0, excepting her student loan obligations from discharge would not be an undue hardship.  The Department points out that her income would have to increase substantially before she would be required to make any payments under an income-based repayment plan.  The Departments argues that the availability of these plans means that there is no undue hardship in this case.  This argument has been rejected:

> [D]espite the fact that the Debtor is unlikely to make any meaningful dent in the debt, the Department argues that the mere availability of the [income-based repayment plan] negates any finding of undue hardship.  I disagree.  Holding that eligibility for [income-based repayment plan] ipso facto leads to denial of an undue hardship discharge would deprive the Court of the discretion granted by § 523(a)(8).

Abney, 540 B.R. at 688 (paragraph break omitted).  Eligibility for income-based repayment plans is "one factor in [the totality of the circumstances] analysis." Nielsen v. ACS, Inc. (In re Nielsen), 502 F. App'x 634, 635 (8th Cir. 2013).

When considering income-based repayment plans under § 523(a)(8), the Court must "be mindful of both the likelihood of a debtor making significant payment under the [income-based repayment plan], and also of the additional

13

hardships which may be imposed by these programs." Abney, 540 B.R. at 689. The hardships imposed by income-based repayment programs include (1) the continued accrual of interest and charges on the debt such that the debt would continue to grow during the 20 or 25 year period; (2) the effect of continually-increasing debt on a debtor's access to credit and on debtor's ability to obtain employment and housing; (3) the effect of "mounting indebtedness, even with a zero or minimal payment" on a debtor's mental and emotional state; and (4) the tax burden if the debt is canceled after 20 or 25 years of participation in the program. Id. The Court balances these hardships against the likelihood that Debtor would make significant payments under an income-based repayment plan. Id. at 690.

Here, the hardships imposed by IBR or PAYE are significant. Debtor's student debt burden has increased substantially during deferment and forbearance. The balance of these loans will only increase under IBR or PAYE.

Debtor's 2007 loans have a principal balance of $7,069.47 with an interest rate of 6.8%. After twenty years of no payments, not including the interest that has accrued since June 2014, Debtor would owe $26,351.90 on this loan.

Debtor's 2002–2005 loans have a principle balance of $19,848.20 with an interest rate of 2.35%. After twenty years of no payments, not including the interest that has accrued since June 2014, Debtor would owe $31,584.80.

14

This mounting indebtedness will have, and has already had, a negative impact on Debtor's credit. Even though the Department is correct that if Debtor remained current on her student loans under IBR or PAYE her credit report wouldn't show a default, the loans would still show up on her credit report. Any lender who pulled Debtor's credit report would see the substantial obligation that Debtor owes to the Department. The presence of these obligations has already affected Debtor's access to credit. Debtor testified that her student loan obligations have already kept her from receiving loans. Debtor's obligation, and the effect on her access to credit, will only increase with time.

This mounting indebtedness has also indisputably been an emotional burden on Debtor. Debtor testified that knowing that the debt is hanging over her, constantly growing, and that she will never be able to repay this debt, is distressing to her. Debtor testified that she feels like she will never be able to get ahead because she will always have this debt. The Court finds this testimony persuasive. The Court will not ignore a hardship simply because it is not reflected on a balance sheet. See Abney, 540 B.R. at 689 ("[D]ecades of mounting indebtedness, even with a zero or minimal payment amount, can impose a substantial emotional burden as well."). The mental and emotional toll of these significant financial obligations on Debtor was clear from her testimony.

Finally, the tax burden that would be associated with canceling the debt at the conclusion of the 20 or 25 year IBR or PAYE period would be significant:

> [D]ischarge of a debt in bankruptcy is not itself a taxable event. However, forgiveness of a student loan at the end of the IBRP period is taxable in the same way as forgiveness of any other debt outside bankruptcy. That is, to the extent a debtor's assets exceed liabilities after the forgiveness, the forgiven debt is taxable income. Thus, if the Debtor were able . . . to somehow accumulate reserves to fall back on for retirement or otherwise, he would then be rewarded with a tax bill based on the amount of principal, interest and other charges owed to the Department at the time of forgiveness, when the Debtor is likely to be at least 65 years old. In contrast, discharge of his student loans in bankruptcy would give the Debtor the opportunity to use his fresh start to support his children and improve his financial situation before he is too old to do so. While "the mere possibility of tax consequences at the expiration of the 25–year repayment period is not dispositive of the issue of whether the [IBRP] represents a viable avenue for repayment of the student loan debt," it is a factor which may and should be considered based on the facts of a particular case.

Abney, 540 B.R. at 689–90 (footnotes omitted).

Here, Debtor would be 55 or 60 (depending on which program she participated in) when the loans would be canceled. At that point, she would be left with either no assets for her later years or, assuming that she was able to put money away for the future, a tax bill to the extent that she had accumulated such assets. If Debtor's student loans were discharged in bankruptcy, she would be able to use her "fresh start to support [her] children and improve [her] financial situation before [s]he is too old to do so." Id. at 690.

As stated above, the Court must weigh these hardships against the likelihood that Debtor would make substantial payments on her student loans under such programs. Id. The Court finds that Debtor has a very low likelihood of ever making significant payments under IBR or PAYE. There is no dispute that Debtor's income would need to increase by almost 50% before she would begin making payments under such programs. Moreover, by the time Debtor is no longer supporting her children, her debt burden will have already increased substantially, making it almost impossible for her to save for her future. And, as discussed above, there is nothing in the record to indicate that Debtor's income will increase substantially in the future.

The Court finds that the burden's imposed by participation in an income-based repayment program, like IBR or PAYE, combined with the very low possibility that Debtor would make substantial payments under such a program, weigh in favor of a finding of undue hardship. This analysis applies to each of Debtor's loans. Debtor's financial situation is such that a discharge of some of the loans—but not all—would still leave Debtor with an undue burden of carrying ever-increasing debt that would likely remain unpaid.

The Court finds that Debtor has shown by a preponderance of the evidence that excepting her student loans from discharge would impose an undue hardship on her and her children. Debtor's financial situation is not likely to improve, her

17

expenses are minimal, and the availability of income-based repayment programs does not outweigh the burdens that those programs would impose, especially considering that Debtor would probably not make substantial payments. The totality of the circumstances shows that Debtor is entitled to a discharge of her student loans under 11 U.S.C. § 523(a)(8).

## CONCLUSION

**WHEREFORE**, Debtor's Complaint to Determine Dischargeability of Educational Loans is GRANTED.

**FURTHER**, judgment shall enter accordingly in favor of Plaintiff.

Dated and Entered:
June 22, 2016

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE